Press Appeal Case Numbers 21-6195 and 22-5096, Zahra Bouye v. James Bruce, Oral Argument Not to Exceed Fifteen Minutes. I, James McKenzie, and the Appellant, may proceed. Good morning, Justices. I want to also reserve five minutes for rebuttal, please. Great. Okay, and good morning again. I am James McKenzie for the Appellant, Zahra Bouye, and we are here on appeal of the United States District Court Opinion out of the Eastern District of Kentucky, Audible Judge Hale, in the case where this is an FDCPA collection case that violated the FDCPA upon the filing of the complaint. It was, and it's important to note the distinction, the complaint itself did not violate the FDCPA. It was what the complaint said in the complaint, which was an attempt to collect attorney's fees that were not permitted by contract. And the complaint itself was an event, and that event is our position, initiated the issue, that particular claim. What about the settlement? Maybe just start there. That's sort of a threshold issue, I think. Settlement of the, are you talking about the settlement of the principal amount of the debt with Mariner Finance by the Appellant? The settlement agreement that the... Okay, there was a settlement agreement, but that settlement agreement was between our client, Zahra Bouye, and the creditor, Mariner Finance. Correct. Mariner Finance, yes. It didn't purport to release claims against Mariner's agents and lawyers and people like that? It had language in there that did that, Your Honor, but it also, in context, and this is what, this is not, first of all, this was not preserved in the record below. This was never brought forward to the trial court. Settlement happened midstream? Yes. It actually happened midstream while we were waiting for the court to rule on our motion to reconsider, or motion to alter amendment of AK. There was a seven month period where the case lay dormant while the court was considering that motion. It's understandable, we were in the middle of COVID. This whole case was practiced beginning in 2019, mid-2019, in the lower state court, the Kentucky state court collection case, brought forward all the way now to 2022, but it was in that period that it took seven months. Suppose we didn't think it was waived or forfeited. What's your substantive argument as to why that release? We're going to, on remand, if the court agrees with us, on our appeal, first of all, it's obviated, excuse me, it's not obviated, but on remand, we have evidence, we're going to be able to introduce evidence that Attorney Bruce actually, by contract, agreed that he would not be subject to the attorney, agent, and any other sort of relationship between himself and Mariner Finance. He literally affirmatively waived that by contract. That's not in the record here because it was not ever brought forward at the time and the actual document itself took us, it was during that seven month period that we procured that document, which we will introduce. You're faulting him for not presenting this argument below and then you're presenting the argument to us about evidence that you haven't presented to us or to any court, just so I, basically this is what's going on. We have a settlement that wasn't argued below, it's now argued to us, and now your main response is one that's not really before us on the papers. Neither are before you, exactly. But what is before the court is that... You're not relying on the second agreement that the parties executed where they said we didn't mean, you might read this original agreement one way or the other. You're referring to the addendum. Yeah. Okay, the addendum was their attempt to memorialize, and without having actually produced at that attorney Bruce. That was not in our possession, but what they agreed to do was, they told us verbally that he was not covered by the agreement, by the settlement agreement, and then they... Why isn't all this parole evidence that we wouldn't look at if we just look at the terms of the settlement agreement? If you look at just the terms of the settlement agreement without any context... That's what you typically do in contract cases. But that is not even a part of this record. Okay, but just imagine it was, or imagine someone's looking at it. But if you're going to imagine it, you have to imagine it on both sides. Well, no, I'm not going to imagine parole evidence. I'm going to imagine that we have the agreement, but I'm at least going to suggest that those would be things you... In the imagination world, where we're looking at the agreement, I'm not going to look at that because I think it's precluded by law. If it was, if it was. Does the agreement itself preclude your main argument? If Attorney Bruce, if that agreement covers Attorney Bruce, obviously, yes, he would be released. And your argument as to why it wasn't was, one, there's this other agreement that Bruce is a party to, plus... It was not the intent of the parties at the time the settlement agreement was entered into. During this long seven-month period where the case... You're saying that there's a separate agreement where Attorney Bruce has specifically waived any kind of third party... That is correct. His representation agreement. And you did not file that... The settlement agreement was filed in our court. We can argue about whether that's appropriate, whatever. Anyway, they were making a jurisdictional argument, which was not a good one, honestly, but they filed the document, but you chose not to file this other document in our court. Is that right? We didn't choose not to. The case was on our motion for reconsideration, our motion to alter him in their vacate. That was what was pending. And that's when... What about in our court, though? It wasn't the settlement agreement filed before us when they made their motion to dismiss? It was. The appeal? It was. Okay. In your response to that... To the motion to dismiss the appeal. Okay. But you agree with me that the settlement agreement was filed, right? I've seen a copy of it. Somebody gave it to me. They filed it in their motion to dismiss the appeal. Okay. Why didn't you file this other document in response to their motion to dismiss? Because if we're correct that the trial court erred in applying the holding in slurp to this case, that in our case, the allegation that the filing of the second retail installment contract, which we have alleged, which is to be taken as true in the motion to dismiss, if that is true, if that second retail installment contract was a new event, creating a new statute of limitations, then the issue of the... It is our position that the issue of the settlement agreement, which was never before the trial court, can't possibly affect that unless the trial court has opportunity to pass on that. I don't understand that. If we say, let's say, and let's say I think you have a decent argument, okay, that there's at least one event in this case that occurred within the statute of limitations, and I'm thinking, okay, fine, normally I would say I've got to give it back because the statute of limitations issue was incorrect. It wasn't a continuing violation. It was a discrete violation under Pernell or whatever that other case is, okay? But if I have a settlement agreement that says that all claims have been released, including against Attorney Bruce as a beneficiary of that contract, why would I send it back? Because it's unadjudicated, and you're seeing it out of context. You're seeing it, and it was put in the record. What is the context that I need? The context is that if the trial court has in its possession, if we were to introduce that into the record, the agreement where he, with Mariner, waived his right to benefit from the settlement agreement and the terminology of the attorneys and agents and so forth, if he literally waived that, the trial court never got a chance to adjudicate that. You would be passing on the merits here at the appellate level. That's, I mean, we never had an opportunity to fully inform. Why didn't you give it to us? I still don't understand that. Why didn't you file it in opposition to the... When that was, when we obtained it, it was just prior to the trial court issuing its opinion on denial of our motion to reconsider, our motion to alter amendment of vacay. Judge Nopanian is talking about our court. This agreement you're talking about was executed before the motion to dismiss in our court. It was executed, but we didn't, what was executed was the settlement agreement with Mariner during the pendency. I understand all that. But the Bruce thing you're referring to, we don't know what it is because you haven't given it to us. This Bruce agreement, that was done. Did you not have it at the time of the motion to dismiss? One argument would be I didn't have it. We didn't have it. When did you get it? We got it in, it was at the time the addendums were executed in... That was all done before the motion to dismiss in this court, wasn't it? No. Absolutely not. Yeah. I mean, I don't believe so. I think I'm correct in saying it was not before the motion to dismiss. I thought the addendum was like a week, I thought the addendum was done like a month after the original agreement. No, it was done long after the original agreement. Not long, but sometime well after the original agreement. When I say long months, several months. At the end of the day, it was not even an issue. This case languished, that was not even an issue. And then the appellee brought forward, started making noise that they had, that these agreements had been executed and they believed it covered their client. But we had assurance from the creditor that in fact it did not. And ultimately we were able to subpoena it from them and we did get the agreement. It doesn't matter who tells who what, I mean it just matters what's written down. The settlement agreement seems pretty clear that it covers attorney Bruce, unless I were, and that addendum is, you know, useless, right, it's just, you can't, after the fact, interpret it under any risk agreement. We were operating on what we knew and what we had, whether or not, if you feel like we should have introduced it into the record during the languishing time between the motion to alter, amend, or vacate, that seven month period, if we should have gone ahead and introduced it into the record, so be it. But at the end of the day, it was very late in the process that all of this came forward, the whole issue was brought up, and then we, you know, we took all your time on this, but I actually have one more question. Go ahead. What does this thing, what does this agreement say? This agreement that you didn't file? It specifically says that the attorney is, that the collection attorney is not the agent, is not the employee, the agent, or has no other relationship except that of independent contractor, specifically, that word. This is not the addendum, this is a third. This is the representation agreement between the creditor and Attorney Bruce as the independent contractor collecting the debt. The original, when they originally retained the lawyer? Yes. That's an older document then. That's the original document, that's the authority under which he was operating. That document was in existence then? That document was in existence, but we didn't know that. Okay, and you learned about it after the motion to dismiss? Yes, absolutely. How'd you learn about it? I guess we're taking evidence now. How'd you learn about it? Just curious. We learned about it during the pendency of the consideration of our motion to alter, amend, or vacate the trial court's judgment. That was in the district court? The district court. That was not before the motion to, before you came to our court and a motion to dismiss was filed in our court. Oh, you're talking about the motion to dismiss the appeal? That's what we've been talking about the whole time, sorry if we weren't... Yeah, that's what I was confused about. I did not understand what you were saying. Both of our questions, I think, were couched in, at the time the motion to dismiss was filed by their side in this court, you had this representation agreement. We did. You just didn't file it with us. We did not file it with you because we thought it was appropriate to file it before the trial court as a part of the merits of the case. Can I ask just on your, on the statute of limitations question, you've conceded that the first, what was alleged to be the first violation of the Fair Debt Collection Practices Act is barred by the statute of limitations? It would be barred, yes, and more than that, without even arguing any equity issue, equitable we thought we had Spokio issues because ultimately, even though he was asking for attorney's fees that were illegal. Well, if you've conceded it, we don't have to concede it, but your argument is the second one was within the limitations period, and that's when the second RAC was filed? Yes, yes, exactly, which we say is a contrived, after-the-fact document to try to cover their tracks or validate. It's contrived because it's not dated, and because there's one other thing, the signature of... It's because the original, what they filed with the original, the complaint itself had an RIC that was not executed, it was very deficient in its execution, and we argued that created a defense for Ms. Boulier. We didn't say it was an FDCPA claim, we simply said this is a defense. We were trying to litigate that, ultimately, as we litigated it, they filed a second RIC that was just fine, and that's when we said, wait a minute, where did that come from? I thought you said it wasn't dated. I didn't say that. It was the original RIC that was filed with the complaint, the one that was not executed properly. Okay, thank you. Good morning, Justices, Mr. McKenzie. We're actually just judges. I would love the promotion, but at this point... I wish I could give it to you. We'll wait and see how the case comes out. My name is Brooks Herrick, I'm here today on behalf of Mr. Bruce, the appellee and cross-appellant. If I could clear up a couple of issues on the settlement agreement and this alleged third party agreement. First of all, I believe that agreement actually is in the record and before the court. I believe they're referring to Mr. Bruce's original executed representation agreement, which they subpoenaed during the pendency of this case without coming to the court and asking for authority to do so, and argued about that in response to the motion. The argument, and it was also made before five district courts and has been rejected, is that because Mr. Bruce... Wait, I'm sorry. It's filed in the record below or was filed with us? With you, I believe. In conjunction with the motion to dismiss. In response to the motion to dismiss. The argument being that he's an independent contractor, therefore does not fall within being an attorney, agent, representative, or person who otherwise took action to collect the debt. You're saying the actual retainer or the agreement with the lawyer was filed? I know they subpoenaed it and I believe they made reference to it, because I actually think they may have filed a motion to keep portions of it under seal, or maybe portions of it were redacted. But the argument is essentially he's an independent contractor, so therefore... Is it this document that has everything redacted? Unless there is a different agreement that I'm completely unaware of, I believe that is the agreement that Mr. McKenzie was referring to. The Mariner Finance Collection Attorney Vendor Contract? Correct. Okay. So, that is in... That was filed... They filed it with us. We have the settlement agreement. We have the addendum. Correct. Okay. So, just briefly on that issue, I do believe that is a threshold issue in this case. As the Supreme Court has said multiple times, an active case or controversy is a cradle to grave requirement that has to be existing at each stage of the litigation. And I understand, admit, we had the settlement agreement. After the case, the judge had dismissed the claims. We learned about it. Ms. Bruce candidly was attempting to work it out with Ms. Bouye to avoid filing a motion, her incurring additional costs, having to ask for fees from Ms. Bouye. But they already filed a motion to reconsider, or 59E, or whatever it was. I mean, why couldn't you just file the settlement agreement? We could have, Judge. We could have. I could have immediately run and done it without... Right. And I guess my further question would be, why didn't you file it in support of your attorney's fees motion? I mean, if your argument is, this is basically frivolous because we've been released, I mean, why would... I mean, surely that would have been... You should have filed it in support of your own affirmative claim. It was fully briefed. It could have been filed as a supplement. However, again, the context, and Mr. Bruce was attempting to have conversations with both Mariner Finance and Ms. Bouye's counsel to understand the claims and arguments of, no, this actually doesn't apply to you, and here's why. What happened is he was trying to give the benefit of the doubt and try to understand the settlement. And whether he proceeded appropriately or not... And I suppose it's admirable that you're trying to resolve something outside of the judicial process, but you've got to represent your client. You've got to do what you have to do, which is, I mean, I think this agreement is key. I don't know why you wouldn't have filed it. I mean, look, I understand on a motion to reconsider, maybe it's a little bit different because you probably didn't think there was much to go on in that motion to reconsider. It just looks like a re-argument, honestly, of the case. So I don't know what there was, and maybe you didn't want to put it in there as an alternative ground. But in support of your own affirmative claim, that just seems odd to me, that you wouldn't have done that. What is the argument, briefly, I guess, or maybe not, I don't know, what is the argument that the representation agreement somehow undoes this beneficiary language? I mean, the settlement agreement says attorney. It says agents and all kinds of people, and it says attorney. So I don't know why, just under the plain language, he's an attorney, right? Respectfully, I don't think that it does, and I don't understand the argument. The argument seems to be that he was simply an independent contractor, not an agent or employee, so therefore it somehow vitiates what the settlement agreement says. Is this the argument that you say has been rejected five other times? Yes. So there were six settlement agreements executed by Mr. McKenzie's clients, all substantively the same, and we did file those because of procedurally where we were at the district court level, and all five district courts have now dismissed those, enforced the settlement agreement, and our final decisions, and they were filed as an addendum to the principal brief. Do we have the citations of those cases somewhere? The actual copies of the orders, and I think at the time, reports and recommendations, are all addendums to Mr. Bruce's second brief. The actual order. Second brief in our court? Correct. So those arguments have been presented and rejected below multiple times. Since you didn't, I mean you could have brought the agreement forward in the district court, would you oppose us remanding the case to the district court to basically figure all this out once you all submit the evidence you're supposed to submit, do any fact-finding that's necessary and issue a decision that we could review? I do think, I don't, I think again, mootness in the Supreme Court has said an intervening circumstance can deprive a court, it has to be looked at as whether it's an active case or controversy. I think it has to be determined, I guess this is the question, for a limited remand on that purpose before proceeding to the merits. I think before we can, I mean you look at the merits and whether they asked to overturn SLORP, to adopt doctrines that have never been adopted in this court, and we have. Adopted by four other circuits. Correct, true. But in what would arguably be an advisory opinion though, and so to the extent that this court desires to adopt that doctrine, if it, on remand, if that issue is not addressed and on remand the district court does find that the settlement agreement released the At least an argument could be made whether it's an advisory opinion. Have you all used our mediation office? Did you? We attempted to mediate, yes. That didn't go anywhere, obviously. No, and actually, no it did not. Is there any possibility that it could? Based on what happened the first time, I would unfortunately say no, I mean I can't talk about, yeah, and you don't know. You guys settle, but I'm just curious whether perhaps it might be worth it. But no, we did participate in that, and I would, well, no. Our mediator is here, in the event you'd like to chat with her on your way out. As a district court we could adjourn. I mean it does seem like the sort of case that, you know, should, it's up to the parties, but, you know, maybe it's productive to at least approach. I think that we've now incurred additional, you know, lots of additional expense arguing over these issues frankly doesn't help. But I mean, obviously, Well, I mean, you think you've got a, I'm sorry, I'm sorry, I mean you obviously think you've got a dead-bang winner with the settlement agreement, right? I mean, if you're doing your decision tree, you're probably pretty. Right, I mean, I think that is helpful to have. I'm curious about Judge Raylor's question, though, about whether you would oppose a remand. A remand, what if it's a remand, but we don't, I mean, I don't know that we would need to reach the statute of limitations question, or do you think we would? In other words, if we were to say the settlement agreement is only relevant if they have a viable claim, or is it, does it even matter whether they have a viable, it's not a viable claim because of the settlement agreement, so put aside the statute of limitations. Correct. I mean, I think it's both. I think, one, they don't have, they didn't have a viable claim to begin with, and to the extent that they did, they released it during the pendency of this litigation. But why isn't the, I guess I'm, I don't know, Judge Raylor's question. I think one of the reasons you oppose a remand is you think the case is moot, but our motions panel has already said it's not moot. And I respect that and understand that they said it was, a release is an affirmative defense. That was a citation to a footnote in a Supreme Court decision that says, that was, the actual holding was about whether, where the case should be heard for the federal circuit or the district court. We would disrespectfully argue that the more appropriate and applicable cases are the cases specifically ruling on mootness and looking at Article III of the Constitution and the case or controversy requirement. What's the flaw in the case or controversy? She is relieved. There is no active, there must be an active case or controversy at all times. But if there's an injury, alleged injury, traceable to your client, and if we were to grant relief, we can remedy that injury in terms of the standing elements, the three standing elements. That is true to the extent it has not been released. And if you look at the six circuits. Why isn't that, I mean, just with standing, you just look at sort of the allegations. Those are the allegations. You have a defense that, you know what, you were injured, but it turns out that that injury, any claim for that injury was released through this agreement. That's a defense of the case. I mean, if this had been filed at the outset, you had this release agreement at the very outset, assuming you actually filed it with the court, wouldn't it be a 12B6? If it existed, I mean, rather than a 12B1, I think that changes the, I mean, facts. Okay, well, that was a cheap shot by me. Right. I mean, if I knew. Assuming it was in existence, wouldn't it be a 12B6 rather than 12B1? Sure. And I think that's the factual distinction, though, of why it's not an affirmative defense and why it, there's no, we're not attesting or claiming that there was no jurisdiction at the time the complaint was filed. That is without a doubt could not be true. I'm just, I'm just analogizing to why I think, I'm just analogizing to why I think the motions panel might have been right about this. I think if you look at the Sixth Circuit's, this Circuit's decision in the International United Auto case, in which one, they dismissed a case as moot, as finding a jurisdictional issue based upon a settlement agreement that was presented to the Sixth Circuit, not only did they do that, but they also chastised the parties for not bringing it up earlier, during the appeal. Okay. Well, hopefully we've effectively done that. No. So, I mean, I just, no. We've at least effectively done that part. Right. Because both of you are a little bit at fault there. Yes. So, why we're bringing it up now is we believe we have, and whether the court. With respect to the settlement, if it's a possibility, my, I don't, I'm not that convinced by the mootness argument. And obviously, our motions panel wasn't. So, if that's the reason not to mediate or remand. Then, I mean. Just mootness. Maybe the settlement agreement covers it. But just as a matter of jurisdiction. As a jurisdictional, I mean, if the settlement agreement applies, she has no claim. Meaning what. The problem there is it hasn't been adjudicated below, but hasn't been adjudicated really by any fact finder. But we can. On your. Why. I mean, I think four circuits have said that each act is considered an independent sort of violation of the Fair Debt Collection Practices Act. Why should we not follow that practice? Well, this court has repeatedly and multiple times held that the continuing violation doctrine does not apply to the FDCPA action. That you must look to the first violation and specifically in the context of a litigation. That you look to the first time the alleged misrepresentation was made. And that continuing to prosecute that case and asking for the same reliefs. This is a different misrepresentation. It is a misrepresentation. One is a misrepresentation as to standing to sue. Which was present in the complaint as the district court correctly found. Second, the allegation as to he filed a different document. He filed a complaint, admittedly said, I later supplemented the complaint, acknowledging that that first version was not signed, put it in the record, which is essentially what Harvey said is not an FDCPA violation because you don't have the immediate, at the time you file suit, have to have the immediate means to prove the debt. This was just a litigation where he presented evidence. His client signed an affidavit of merit. But I don't, I mean a lot of that is just, you're saying it's not true, it's not true on the merits. I mean that's all well and good, but I guess their argument is you essentially filed a phony document to try to get this assignment, you know, done before it had to be done. And by the way, the Kentucky Court of Appeals sent it back, right, so they didn't agree that their summary judgment was appropriate. So why is that not an independent violation? I mean, I don't, it's not the complaint, right, and it's not something that's, I don't see how it's a continuing violation, you're just filing a separate document that they're saying is, you know, ginned up. One, I think the document they allege was ginned up in the genesis of the alleged discreet violation. It was actually an attachment to an affidavit signed under penalty of perjury by a mayor under finance attesting that that was the document. So their argument is, you're saying the argument's wrong. It's a genuine document, it's not dated, right, the assignment box and that, I mean, somebody signed it, the declarant is not the person who signed it, right? The declarant is somebody else who, I don't, I mean, there is some oddity to it, and all I'm saying is it's just a separate act when they did it, right? That is, and my time is up, may I respond? The issue, though, is this is also a defense to an FDCPA action that you're entitled to rely upon the representations of your client. The courts have held multiple times there's no duty to partake in an independent investigation as to the veracity. So basically, we have his client telling him under oath, under penalty of perjury, I own this debt, I have standing to sue. So he is entitled to rely upon those representations. So even if, in the underlying case, there was a, but... So presumably, you would have won, or you would win on the merits, because that claim, that any claim based on the second RIC or whatever it was, any claim based on that is meritless. I understand that's your argument, but why does that mean it's outside the statute of limitations? So, well, one, I think that's a separate argument. What I was making was a different defense, to be clear, from the statute. Even if this court were to assume it was within the statute and it's an act of discreet act, Mr. Bruce, it's still not an actionable claim that needs to be remanded, because it is a defense, even if we assume it's actionable, that Mr. Bruce is entitled to rely upon the representations of his client, and they signed an affidavit, again, under perjury, saying that... You have an alternative ground. Correct. Which was made... If we don't agree with the district... Correct. Which was made in the motion to dismiss, and you can affirm on other grounds. Okay. Great. Thank you. Any other questions? Okay. Thank you. Thank you. Mr. Rebuttal? Can I just ask you, just to make sure to get it in? I'd sure like to make a few points, but go ahead. I'm sure. The document Judge Numbanian held up, was that, was your friend on the other side correct in his representation about what that document was? That is. It is. Go ahead. That is a redacted version of it. It was filed in the motion to dismiss the appeal. I was under confusion here. I thought you were talking about in our appeal, had it been filed. No. In the motion to dismiss the appeal, we did produce that, and it's redacted. Under section 2.2, which you have, it's unredacted, that agreement specifically says, the relationship between forwarder and attorney, forwarder being the creditor, shall be that of independent contractor under no circumstances is the relationship among the aforementioned to be construed as that of principal and agent, master servant, employer-employee, joint venturer-partner or any other similar relationship. That is the, in all the cases that the courts have ruled on, did not have this document. They, this argument was, they never had the benefit of looking at the relationship that he had contracted for with Mariner Finance. So that's the context of the other cases. But the settlement agreement says attorney, this is a lot of other stuff, but it also says attorney. Why isn't, I mean, surely he is an attorney. He is an attorney. We'll concede he's an attorney, but he's an attorney for Mariner Finance. I mean, you can disclaim whatever, but he's going into court and saying, I'm here on behalf of my client, Mariner Finance, and the settlement agreement says that the attorneys are also released. I, why wouldn't that? It's a matter of how you read, your interpretation in the context of what he contracted for. If you don't agree with me, that's, so be it, but that's what, that's what he contracted to be. And that is what, when the case was settled, it was represented to our clients was the relationship and that there was no release. That's the way it was represented, but if you read it differently, you read it differently. Just a couple of other points I'd like to make here in the couple minutes that I have. First of all, this court has ruled, even in the Slorp case, it's cited in Slorp at 259, a plaintiff who alleges several FDCPA violations, some of which occurred within the limitations period and some of which occurred outside, will be barred from seeking relief for the untimely violation. But that plaintiff may continue to seek relief for those violations that occurred within the limitations period, citing Brunel. So if we agree with you, that makes a lot of sense to me. But your friend on the other side has a counter, another argument, which is that it wasn't actually a violation. Yes, it was in the time period, but it wasn't actually a violation. It became a violation when they filed the second false, allegedly false, retail installment contract on July 2nd of 2020. And then tried to cure it when they filed their motion for summary judgment, they cured it with the affidavit and a differing... He just said, I think he's saying basically the lawyer was relying on his client and that's the lawyer that's being sued for that violation. And then when we objected and filed a cross motion for summary judgment, in response to our cross motion, he filed the original one that was poorly deficient, the deficient retail installment contract. So he refiled it again. So in the midst of it, he files one with an affidavit that purports to cure the deficiencies of the original. And we're alleging, taking our complaint as alleged true, we're saying this was a contrived after the fact document. We never got a chance to go through any of the discovery on that or drill down on that whatsoever. So at that event, we allege in our complaint, created a separate, distinct FDCPA. We've never argued the continuing violation document. We understand. Thank you. Secondly, this court in Courier v. First Resolution Investment Court, specifically says per Giannis v. Javich, Block and Rathbone and the progeny including this case, holding that the FDCPA applies to interrogatories and motions for summary judgment. It was in the context of a motion for summary judgment that the new RIC, the newly executed or differently executed RIC was filed. So if it is, as we allege, a contrived wrong document or false document, then it would create a separate event, which under Rastisky, which is Justice Thomas in the Rastisky case specifically, defined, when does the claim arise? The event creates the claim. So that was a separate event in our views and we've never argued the continuing violation. But then at the end of the day, this court, this circuit has held that, I'm sorry, the last point I'm going to make, because I'm going to repeat myself. Why didn't he file in the four months between the time they, Mr. Bruce, learned of the settlement agreement and began claiming that it released him and made noise about that? Never introduced it at the trial court level. Our theory on why they didn't introduce it at the trial court level is because in every that was adjudicated and said he was released, that he referred to, as a third party beneficiary, they're not entitled to their attorney's fees. And so he didn't introduce it at the trial court level. He held that out because he was gambling that Judge Hale would grant their attorney's fees without having to introduce it because if he introduces it, now it's a third party beneficiary issue and he can't get his attorney's fees and he gambled on that issue and that's our theory on why that happened. He said that the clients were in negotiation. All through this process, attempts to settle, and at the mediation, a de minimis, the amount of money has been spent on this from that mediation to this point is ridiculous compared to what we offered to try to settle this case for. Couldn't get it done on even a de minimis settlement. It wasn't like we were being obstinate. We were trying to end this litigation that had gone on for more than two years. So at the end of the day, we believe that our complaint states a claim that the event of filing the differing executed RIC was false, it was a contrived document. If it's true, taken as true, that would create an FDCPA claim and that is within the statute of limitations of our filing of the complaint. Alright, thank you. Thank you. Thank you both parties for the briefs and argument. The case will be submitted.